IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Shawn Adams,            Case No. 3:07 CV 3569

         Plaintiff,        MEMORANDUM OPINION
                                      AND ORDER
    -vs-
                                      JUDGE JACK ZOUHARY
Penn Line Services, Inc.,

         Defendant.

## INTRODUCTION

This matter comes before the Court on Defendant Penn Line Services' (Penn Line) Motion for Sanctions (Doc. No. 26). Plaintiff Shawn Adams filed an Opposition (Doc. No. 31), to which Defendant filed a Reply (Doc. No. 32).

## BACKGROUND

Penn Line hired Adams in January 2005 as a foreman. On October 3, 2005, Adams notified Penn Line that he had been called to active duty in the United States Army. His military paperwork gave no date he was required to report. Prior to Adams' notification, Penn Line had no knowledge he was a member of the U.S. Army Reserve and subject to deployment. Adams did not indicate when he would cease working for Penn Line.

The next day, October 4, 2005, Adams showed up for work, but left later that day without permission and without telling anyone. He never returned to work. Penn Line terminated Adams on October 6, 2005.

Adams was deployed by the Army in late 2005. He returned home on leave in early summer 2006, but failed to report back to the Army in August and was declared AWOL. In September 2006, the Army declared Adams to be a deserter and a felony warrant was issued for his arrest. Around this time, Adams contacted Penn Line to request his job back. Penn Line was unaware of Adams' status as an Army deserter. Penn Line required Adams to submit to a drug screening on September 29, 2006 before he could report to work on October 3. Though Adams appeared for and passed his drug test, he failed to report to work on October 3, nor did he notify anyone at Penn Line of his absence. Adams' supervisor left messages for Adams on October 4 and 5. After three days of unexcused absences, Penn Line terminated Adams' employment for a second time.

Penn Line later learned (during the course of this litigation) that Adams had been arrested for forgery on September 29, 2006. He was locked up in a Sandusky County jail until October 23, 2006, when he was sentenced and transferred to the Ohio State Penitentiary. While incarcerated by the State, the Army located Adams and requested his extradition to military jurisdiction after he finished his civilian prison term. In February 2007, Adams was transferred to Fort Knox, Kentucky, and the following month he agreed to a Request for Discharge in Lieu of Trial by Courts-Martial. Adams was released from custody and discharged from the Army under "Other Than Honorable Conditions" in May 2007 (Doc. No. 26, Ex. A, p. 2).

After his release from the Army, Adams contacted Penn Line to see about regaining his job, but no open positions were available. In November 2007, Adams filed a Complaint (Doc. No. 1) alleging a violation of the Employment and Re-employment Rights Act of 1994 (USERRA), 38 U.S.C. § 4312(a), when Penn Line failed to re-employ him.

2

Adams asserted in this litigation, without corroborating evidence, that he was honorably discharged and therefore eligible for USERRA protection. He did so throughout the pendency of his case, up to and including the settlement conference in August 2008. Adams also filed an affidavit (Doc. No. 26, Ex. B) in July 2007 swearing that he "served honorably" and returned from "active duty" in August 2006. He also testified under oath at his deposition in June 2008 that he received an honorable discharge (Doc. No. 26, Ex. C, p. 54). He did so again in written discovery responses in July 2008.

In addition to all the above, Adams' counsel objected to Penn Line's attempts to obtain verification of Adams' discharge status (Doc. No. 19). The Court found the objection wholly without merit. Thus, Adams' counsel not only failed to verify his client's status, he took steps to block its disclosure.

Moreover, Adams directly represented to the Court at the settlement conference that he had been honorably discharged. The case was resolved at that conference, contingent upon proof that Adams had received an honorable discharge.

To expedite the verification, the Court subpoenaed the Department of the Army for conclusive documentation of Adams' discharge status, which it received in September 2008. These documents indicated Adams' discharge to be "Other Than Honorable Conditions" (Doc. No. 26, Ex. A, p. 2).

Penn Line moved for sanctions against both Adams and Adams' counsel, Kollin Rice (Rice), on the grounds Adams continued to pursue a claim without a factual basis in law, thereby requiring Penn Line to expend substantial and unnecessary resources. Penn Line requests reimbursement for the legal expenses and attorneys' fees directly incurred by the misconduct of Adams and Rice.

## STANDARD OF REVIEW

In deciding whether to impose sanctions, a federal court may base its decision on Civil Rule 11, 28 U.S.C. § 1927, or its inherent power to impose sanctions based on bad-faith conduct of a party before the court.

Civil Rules 11(b)(3) & (c)(1) state:

> By presenting to the court a pleading, written motion, or other paper . . .[,] an attorney or unrepresented party certifies that to the best of the person's knowledge . . ., formed after an inquiry reasonable under the circumstances[,] . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> * * *
>
> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

Rule 11's standard under which parties' actions are governed is "reasonableness under the circumstances." *Albright v. Upjohn*, 788 F.2d 1217, 1221 (6th Cir. 1986); *see also Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) ("In this circuit the test for the imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances." (citation omitted)). Rule 11 "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." *Albright*, 788 F.2d at 1221. A good-faith belief in the merits of a case is insufficient to avoid Rule 11 sanctions. *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990). Sanctions are mandatory in the event the court determines Rule 11 has been violated, but the court has "wide discretion" in delineating the extent of those sanctions. *Albright*, 788 F.2d at 1222.

4

Additionally, 28 U.S.C. § 1927 permits the court to issue sanctions against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously," thereby requiring that attorney "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Again, good faith is not a defense to sanctions under this section. *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) ("28 U.S.C. § 1927 authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absences of any conscious impropriety."). When an attorney knows or reasonably should know that his client's claims are frivolous, a court may assess fees directly attributable to the misconduct against the attorney. *Id.*

Finally, "[a] federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Trust v. Sabino*, No. 99-4214, 2000 U.S. App. LEXIS 25404, at *1 (6th Cir. Sept. 28, 2000) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50) (1991)). This is an independent basis aside from Rule 11 or § 1927 for sanctioning bad faith litigation conduct. *Chambers*, 501 U.S. at 44-45. In the Sixth Circuit, a court need not find the conduct sanctionable under any other rule or statute to apply its inherent powers to impose sanctions. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). A court need only find "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997). Furthermore, a court may impose sanctions jointly and severally against a party and his counsel. *See, e.g., Tropf v. Fid. Nat'l Title Ins. Co.*, 289 F.3d 929, 939 (6th Cir. 2002) (affirming

district court sanctions penalty against plaintiffs and their attorney jointly and severally for, *inter alia*, presenting factual allegations before the court that "patently lacked evidentiary support").

## DISCUSSION

A threshold requirement for armed services personnel seeking USERRA protection includes an honorable discharge from the armed forces.[1] 38 U.S.C. § 4304. Adams' counsel failed to determine Adams' status with the Army prior to filing his Complaint, or anytime thereafter during the nine months of litigation. This failure satisfies the Rule 11 duty that requires "some prefiling inquiry into both the facts and the law behind a claim."

The U.S. National Archives and Records Administration usually responds to requests for military separation papers within ten days; the average response time on all requests is just under three weeks. Military Personnel Records, SF-180, http://www.archives.gov/st-louis/military-personnel/standard-form-180.html (last accessed May 4, 2009). Therefore, Rice could have determined within weeks whether Adams was discharged honorably (and, consequently, whether his claim had merit), regardless of Adams' delays in providing that information himself. Moreover, Rice could have requested this Court's assistance if he encountered delays. Finally, no deadline loomed that might have time-barred Rice from pursuing this necessary information.

---

[1] To present a claim for USERRA protection, a member of the U.S. armed services must meet five conditions:
1. He must have civilian employment;
2. He must give his employer notice prior to military service;
3. His cumulative length of service causing his absence from employment must be less than five years;
4. He must have been released from military service with at least a general discharge under Honorable Conditions; and
5. When he returns from active duty, he must report back to work within a certain period of time. 38 U.S.C. §§ 4304 & 4312.

6

Rice argues his experience in requesting Vietnam-era military records supports his assertion that military record requests "usually take a prolonged period of time" (Rice Supp. Aff., ¶ 5). He also notes Penn Line's request for military records took over two months to be fulfilled, from July to September 2008, and that it took a subpoena and personal intervention from this Court to obtain the records (*id.* ¶ 4). Therefore, according to Rice, "[t]here is no telling how long it would have taken to get a response through the normal channels" (*id.*). However, Rice does not indicate that he ever took *any* affirmative steps to obtain the records, only that he *assumed* the records would take a while -- an assumption that should have spurred Rice to request the records early, not turn a blind eye.

Instead, Rice persisted in relying on Adams' own statements regarding his discharge and inability to obtain his service records, despite "hav[ing] known Mr. Adams for several years" and finding "he has historically failed to make legal matters as high a priority as [Rice] would recommend, and had a few conspicuous incidents when he has disregarded [Rice's] advice" (Rice Aff., ¶ 4). Rice knew his client was unreliable, yet took no steps to verify his statements regarding his military discharge. Even if Rice had a genuine, good-faith belief that his client was not misrepresenting his military discharge status (which, given their history, may be questionable), good faith is no defense to sanctions under either Rule 11 or Section 1927. *Mann*, 900 F.2d at 958; *Jones*, 789 F.2d at 1230.

Rice's actions in this case were unequivocally unreasonable under the circumstances, qualifying him for sanctions under Rule 11. His failure throughout the nine-month litigation process to seek out corroborating evidence to support a threshold requirement of his client's claim (indeed at one point objecting to Defendant's request for that information) resulted in Defendant, and then

7

the Court, taking the initiative. This amounts to an unreasonable and vexatious multiplication of the proceedings, sanctionable under Section 1927.

Sanctions are permissible against Adams himself under either Rule 11 or the Court's inherent sanctioning power. The standard for sanctioning parties is the same as that for counsel: reasonableness under the circumstances per Rule 11, or "in bad faith, vexatiously, wantonly, or for oppressive reasons" under this Court's inherent sanctioning power.

In the instant matter, this Court finds sanctions against Adams appropriate under both standards. Rice argues that as a layman, Adams was not likely to have known the elements for eligibility under USERRA, and therefore was not intending to defraud Penn Line with his suit. Rice further argues Penn Line "produced no evidence in any form" that Adams "was aware of the nature of his discharge or acted deliberately or with an intent to defraud when he inaccurately represented it" (Doc. No. 31, p. 8). This argument is disingenuous. Adams' military records clearly show his discharge was for other than honorable reasons. Moreover, Adams' *signature* is on a document requesting discharge in lieu of trial by courts-martial in which Adams agrees to an other than honorable discharge in exchange for avoiding trial by military tribunal (Doc. No. 26, Ex. A, pp. 9-10). Adams clearly knew he was acting unreasonably and in bad faith by continuing to attest to an honorable discharge throughout the litigation, including signing interrogatories and testifying at deposition, both under oath, and again, in person, to the Court at a settlement conference. These explicit acts of bad faith qualify Adams for sanctions, both under the more stringent inherent sanctioning power as well as the "reasonable under the circumstances" test of Rule 11.

Penn Line seeks reimbursement of its attorney fees as a sanction. In this regard, Penn Line has submitted billing records showing the number of hours spent, and the hourly rate charged. *See*

*Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006) (*citing Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994)).

Penn Line requests the Court reimburse its attorney fees incurred during this litigation. Legal fees may serve as an appropriate sanction. *See, e.g.*, Fed. R. Civ. P. 11(c) ("The sanction may include . . ., if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); 28 U.S.C. § 1927 ("An attorney . . . may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of [unreasonable and vexatious] conduct."); *Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 395 (6th Cir. 2009) (noting sanctions may include payment of attorney fees pursuant to Rule 11); *Red Carpet Studios Div. of Source Advantage, Ltd. v . Sater*, 465 F.3d 642, 646-47 (6th Cir. 2006) (finding the district court did not abuse its discretion in awarding attorney fees as a sanction under either Section 1927 or pursuant to the court's inherent authority to sanction).

The Court has a range of options in determining an appropriate sanction with regard to those fees. Those options include awarding Defendant its attorney fees for the entire case; awarding attorney fees from the date Adams first misrepresented under oath the status of his military discharge (June 20, 2008); from the date that Rice knew or should have known of the status of his client's military discharge; or from the date of the settlement conference (August 20, 2008) when Plaintiff himself misrepresented to the Court, parties and counsel the status of his military discharge. Taking into consideration the entirety of the circumstances of this case, the Court chooses to take a lenient approach, in the hopes that Rice has learned his lesson. The Court finds that expenses Penn Line incurred in preparation for attendance at and following the settlement conference of August 20, 2008 will serve adequately as an appropriate sanction against both Adams and Rice.

9

Billing documentation submitted by Penn Line reflects the following charges from August 18 through August 20, 2008 (Doc. No. 26, Ex. F, p. 15):

| Description | Hours | Amount |
|---|---|---|
| Prepare for conference call regarding settlement conference | .5 | $102.50 |
| Prepare for and attend telephone conference regarding upcoming court ordered settlement conference | 1.00 | $205.00 |
| Preparation/attend telephone conference call with Pulver, R. Rankin and K. Somich | .80 | $200.00 |
| Attend settlement conference with K. Somich and R. Rankin | 6.90 | $1,725.00 |
| Prepare for and attend court ordered settlement conference | 7.30 | $1,496.50 |
| TOTAL | 16.5 | $3,729.00 |

Plaintiff makes no objection to the number of hours or the hourly rate, which this Court also finds reasonable given the attorneys' levels of expertise. Therefore, the Court finds $3,729 to be a reasonable sanction against Adams and Rice for their continued pursuit of this meritless case.

## CONCLUSION

For the foregoing reasons, the Court grants Penn Line's Motion for Sanctions against Plaintiff Adams and his counsel Rice, jointly and severally, in the amount of Three Thousand Seven Hundred Twenty-Nine Dollars ($3,729).

IT IS SO ORDERED.

                                                s/ *Jack Zouhary*
                                                JACK ZOUHARY
                                                U. S. DISTRICT JUDGE

                                                May 29, 2009